May it please the Court. My name is Todd Malaise and I represent Freddie Brown, who is the debtor and appellant in this case. This Court is asked to decide whether the Bankruptcy Court exceeded its authority when it imposed additional conditions to a Chapter 13 plan beyond those conditions set forth in Section 1325 of the Code and whether the conditions it imposed contravened other provisions of the Bankruptcy Code, specifically Sections 1329 and 1328. Freddie Brown filed a Chapter 13 to reorganize his debts. In that plan, he proposed a plan to pay his creditors in full over a five-year period at $1,080 a month. The trustee objected to confirmation. She didn't object because the plan violated any of the confirmation requirements or any other provisions of the Code. Instead, she objected because it didn't pay the creditors in full. The debtor did not pay in all of his monthly disposable income, which was about $2,191 a month. Therefore, she objected. The Court, she argued that it wasn't fair. The Bankruptcy Court agreed. The Bankruptcy Court refused to confirm the plan as proposed, but gave the debtor two options. He could confirm the plan if he agreed to what we're calling the lien language. If he agreed to, he could continue to pay the $1,080 a month, but he relinquished his rights to modify the plan under 1329. If doing so, would ever decrease the plan below 100% payout to unsecured creditors, and he would relinquish his right to get a discharge unless the creditors were, in fact, paid in full. When were the payments to the unsecured creditors to start? When you say they're being paid 100% under the 13 plan, were those payments to commence upon confirmation of the plan, or did I understand correctly that they were backloaded? They are backloaded, Judge Eagleheart. The secured priority debt gets paid first. They're paid interest. The secured is paid interest. Priority is generally not paid interest. Once those are paid, then the unsecured creditors get paid, and the Chapter 13 plan itself, the boilerplate provision, which the trustee did not object to, states that. Of course, they can address it and explain in more detail, but as I understand the concern that your client's facing from the trustee, and maybe even from the judge, is that if circumstances change, then notwithstanding the plan's provision of 100%, circumstances change for the negative, then the unsecured creditors get either less than 100% or nothing at all, and they want you to waive the right to change the plan later so that you could secure a lesser amount. Is that correct? That is correct. That is your argument. All right. And we contend that that is impermissible, and it exceeds the court's Section 105 authority by doing that. Let me ask you, what is the effect of that in the order for modification? I'll ask the other side if I remember the same thing. If a modification is requested later, does it tie the bankruptcy judge's hands in some way? Orders can be revised later? Is there some vested rights that somehow make that part of the order? I'm just wondering what that adds. Can't the bankruptcy judge King, who I think came up with this perhaps, couldn't he just do that without putting it in the order? If somebody comes back for a modification 35 months later, he can insist on it there, but also consider a wider range of things? What is the effect of that language on the judge? That is one of the problems that the debtor has in this case, is by imposing the court-imposed conditions, it eliminates or removes the judge's discretion to modify the plan. Well, it's the same judge. Why would it bind his discretion? You're going to tell me something about bankruptcy that I need to know about. Well, the bankruptcy, the confirmation order will state that the debtor waives his right to modify the plan down the road. Well, this Molina order says he waives it if it doesn't have the conditions that are set out in that clause. I mean, any modification must meet the standard in the Molina provision, right? It's not boring modifications. It's boring as wide a discretion as might apply to a modification. It is restricting the debtor's rights to modify the plan and only allowing him to modify the plan as long as it still pays 100 percent. No, I understood that, but once you get back in front of the same bankruptcy judge or another bankruptcy judge. I think it could be, and if it's not binding, then what's the purpose of having that language in there? Well, that was sort of my question. How is that, practically speaking, really affecting your client, other than it's giving you a heads-up of what the bankruptcy judge is thinking? Well, once you move on, I'm not sure what to make of that, but I don't know what the effect of that language is other than it is certainly telling the debtor, here's what I'm going to do if you come back to me. I do contend that it does tie the court's hands down the road. That's the debtor's contention at this point. So the outcome of this appeal should turn on the textual analysis of 1325 and 1329 and 1328. The plain language of 1325 dictates that the plan should have been confirmed as proposed because the plan fully complied with the confirmation requirements in 1325, and 1325 sets forth the exclusive confirmation requirements. 1325b1 gives the debtor, all debtors, the right to proceed under 1325b1a, which states that the debtor will pay, propose a plan to pay all creditors in full. That's an entitlement. You're claiming that your client's entitled to confirmation if 1325a is complied with. Is that correct? 1325a and 1325b, and that is correct. Your authority for the entitlement to have confirmation. Petro v. Michelin, I believe, which is in my brief, that's, I believe, a Seventh Circuit Court of Appeals, and there's also two Circuit Courts of Appeals that stand for that same proposition, that if the requirements are satisfied, then the confirmation is mandatory because 1325a states the court shall confirm the plan. Are there any circumstances where the bankruptcy judge can add conditions to a plan that otherwise is in compliance? I think nonsubstantive conditions that help or further administrative stuff, I think, are allowable. And is there any circumstance, I guess sort of as a supplement to that question, is there any circumstance where the bankruptcy judge can reject such a plan, I guess it's a flip side of the entitlement, where the judge can say, well, you know, this plan, though in compliance, just isn't good enough in the court's opinion. Is there any discretion on the part of the bankruptcy judge to reject such a plan? No, Judge Engelhardt. And that's because 1325a states if the plan meets these requirements, it shall be confirmed. The second option of 1325b is 1325b1b, which says the debtor can propose a plan to pay in all of his monthly disposable income. But the debtor has that option, and the debtor chose to proceed under 1325b1a. And 1325b1 addresses how much the debtor has to pay, and 1325b4, since the BAPSIPA amendments in 2005, now address how long the plan has to be. And under 1325b4, the plan has to be five years for someone like Mr. Brown, who is the above-median debtor. So he's fully complied with 1325b1a and b1b4, because he's proposed a plan to pay, his credit isn't full, over five years. An important note is the bankruptcy court did not make a finding that the plan did not comply with 1325. In fact, the bankruptcy court seemed to acknowledge that fact. And the trustee did not argue that the plan did not comply with 1325. Did the bankruptcy court specifically acknowledge that it did, it was in compliance and otherwise would be subject to confirmation? He did not explicitly state that, but he did say that he understood, basically notwithstanding your arguments, he ruled that he was allowed to add additional conditions. Even if the bankruptcy court is allowed to impose additional conditions, these conditions clearly contravene Section 1325.9, the debtor's ability to modify the plan, because as I stated, it restricts the right in some way, also restricts his rights under 1328 to receive a discharge. But as long as the unsecured creditors are provided for 100% under this Molina language, there's still an opportunity for the debtor to modify the plan subsequent, isn't there? That is correct. But 1329a states that the debtor may modify the plan to increase or reduce the payment to creditors. So the debtor no longer has a right to reduce the payment to creditors if it reduces the plan to pay less than 100%. Now, I understand in this case you objected to it in the bankruptcy court before the judge imposed. As I understand the brief, you're kind of faced with a dilemma where the judge is saying it's either going to be this or this, take your pick, and you say, well, I don't want either one of them, but if I have to take one of them, I'll go with the Molina language and pursue it on appeal. Is that 1329 otherwise waivable, though? I realize you didn't waive it in this case, but is it otherwise waivable? It's waivable at the debtor's discretion, but if you're compelled to waive one of your rights, then I would argue that . . . Right. Then you didn't waive it. That's correct. It's not voluntary. Well, why do you say that it's waivable? I don't think it's an issue in this case, but why would the right to modify in a 1329 be waivable? Why would it be waivable? Is there a case law that says it is? No, there's not. In fact, Judge Gargatta in Crawford and McCarthy, his prior decision on this where he ruled the same way he did in Mr. Brown's case, he ruled that the debtor waived their rights. There was a waiver argument made, and I believe he ruled that the rights were waived. Since that ruling, this issue started with In re Molina, which is about four, maybe five years ago, and within the Western District, San Antonio Division. Since then, Judge Gargatta ruled in In re McCarthy and In re Crawford that . . . In re Molina, it was a two-page opinion. It just addressed whether or not the Molina language contravened 1325. It didn't address whether it contravened 1329, but Judge Gargatta took it one step further in Crawford and McCarthy. He said that it did not contravene 1329 at that point, and he relied on Molina. Since then, there have been three other opinions that I've been able to find that . . . All in the Western District of Texas? No. No. These are in other jurisdictions. It appears that the trustees' efforts over the last three or four years have been throughout the country to pursue this as an angle to get the debtors to pay in more, and there are three opinions, In re Conklin, In re Eubanks, and In re Boisjoli, and they all state that adding these conditions contravened or the bankruptcy court exceeded the bankruptcy court's authority. In some of these cases, they were exact same Molina language. In some, they were similar type conditions. But they all ruled that bankruptcy court did not have discretion to do that, and In re Boisjoli cited . . . and they rejected McCarthy, and they rejected Crawford, and In re Boisjoli heavily relied on Martinez, the reasoning of Martinez. In addition, this court in U.S. v. Sutton stated that if the court does not have authority to issue orders that contravene the bankruptcy code, and the U.S. Supreme Court recently in Law v. Siegel states that . . . follows that up and states that the bankruptcy court does not have that authority as well. I have no other questions. I will stand on my brief. Thank you. Good morning, Your Honors, and may it please the Court. After consideration of the certified issue, and if this Court is of the opinion that the condition knowingly and voluntarily chosen by the debtor contravenes the code, it is not sufficient that the condition be stricken. The Court must vacate the order confirming plan as the plan, despite the proposal to pay 100 percent, did not meet the requirements for confirmation, considering all applicable provisions of Chapter 13 related to the confirmation process. However, the trustee is of the opinion that the condition is permissible. Let me ask you about the 100 percent. Is it because of the word approximate or approximately, or why are you saying it's not a 100 percent plan? Well, the record shows that the plan didn't comply with 1325A because the Court considered other applicable provisions of Chapter 13, including the trustee's role to preserve assets of the estate and the prohibition to transfer assets of the estate, such as additional earnings, without court authority. What property the bankruptcy estate . . . The thing is that this word approximate is some part of the concern that it's not paying 100 percent of the unsecured creditors. But I also, I guess, read in the opposition's brief that that is part of the format for the plans in this particular district. Is that correct, that language, that word? Yes. The language in the form plan does state approximately, and that is . . . Is that a concern of yours? I mean, we don't need to go down this road if that's not an argument that you're making. Is that a concern of yours, that that's the finding is that it's an approximate, or the assertion is that it's an approximate full payment? It is an assertion that it is approximate, and also because of the arguments made at the confirmation hearing by Debtor's Counsel wherein as much he admitted to dissipation of the excess income without court authority until such time after it had been spent. So dissipation, I mean, he's not paying 100 percent. He's not paying off the unsecured creditors for seven months or whatever your calculation said he could do. Is that what you mean by dissipation? It's not being used for that purpose? It's not being used, it's not being retained in the estate for future use if it's not going to be paid now? Right. It's not being retained and preserved, and it's coupled with the idea of 1325A6, which is a confirmation requirement of a debtor's ability to actually comply with the plan that is before the court for confirmation. In this case, when the debtor is arguing that his ability to successfully complete, which he so much has admitted even in his request for direct appeal to the bankruptcy court, that such risk is increased without the ability to modify despite him being his choice to retain $1,111 per month. He didn't have much of a choice, but it was his choice. Well, what do you do with the language of 13—I'm going to leave a subpart out. I'm sure 1325B1 and then A and B. It seems to me that that's only one of the two alternatives to pay up front all the unsecured creditors. The other option is you don't have to do that if the plan does provide for the full payment at—or full payment eventually. I mean, it seems to me you are insisting on one of the two alternatives when it's up to the debtor initially in presenting the plan which one of those two structures plan around. Well, the debtor wants this court to focus on his proposal to pay 100 percent over a five-year period and nothing more, but the debtor reads more into 1325B1A than actually exists. It does not expressly permit retention and dissipation of excess income, and it excludes the applicable commitment period for defining the term of the plan. So what this means is if Congress— Now, what are you quoting from or summarizing just then? Are you talking about— If you were to read the actual language of 1325B1A— Well, I have, but is that what you're summarizing? Yes. Is that what you were doing? Yes. Okay. Because it doesn't—it just talks about the value to be distributed to unsecured claims is not less than such claim. But nowhere expressly does it state that the debtor gets to retain the excess income and dissipate it. Nowhere does it state that the applicable commitment period should define the term of the plan, much like it does in 1325B1B. So if Congress wanted to give debtor five years to pay the claims in full, it could have included the term applicable commitment period in the 1325B1A subsection, but it did not. And nowhere in the code does it state that the debtor be required to satisfy the claims when he has the ability to do so in less than five years. Because if you look at 1322D1, it states that the plan may not provide for payments longer than five years. And this is further demonstrated by 1322 that would prohibit a below-median debtor with the exact same disposable income from proposing a plan that exceeds 36 months. Clearly, Congress did not intend to penalize the poorer debtor, prohibiting that debtor from filing a plan and proposing a term longer than 36, and allowing the debtor who has more Just because he's an above-median debtor after completion of the applicable, the means test form, which is form 122C. I just, I'm not sure I understand this argument. We're talking about 1325A and 1325B. And as regards 1325A, you agreed that the bankruptcy court made no finding about whether or not the plan complied with 1325A. Correct, Your Honor. It made no express finding one way or the other. But impliedly, when it was— It made no express— Okay, you're going to tell me there's an implied finding. But impliedly, when reviewing the record, one can see that the trustee was admitted—the trustee, excuse me, the bankruptcy court was admittedly concerned with dissipation of estate assets, because what lies at the heart of this appeal is what constitutes property of the estate. As this court has noted in Barron v. Countryman, post-petition earnings are property of the Chapter 13 estate. And as this court also noted in Barron v. Countryman, the debtor has no authority to transfer post-petition earnings to an attorney, because that case was limited to the transfer of assets to a particular attorney, but the same should apply to any transfer of post-petition earnings without court authority. And that was one of the main concerns of the court. In fact, when it imposed the conditions, it was—and offered the conditions, two of them, that was one of the concerns, especially taking into account his prior decision in In re. Pountain, as it was addressed in In re. Crawford and In re. McCarthy, that when a debtor transfers or otherwise dissipates additional earnings that constitute a non-exempt asset of the estate and does so without a court authority, it's not economically feasible where a modification could work. The only remedy at that point would be dismissal of the case. So adhering to the bankruptcy court's prior decision regarding similar facts, the court imposed a condition that was premised on the idea that going down, later down the line, if you were to seek a modification to reduce the dividend and the horses, the proverbial horses out of the barn because the income is gone, modification will not work. The only remedy at this point— Have you ever followed up? We're still on you. I'm sorry. Go ahead. Oh, I've got a brand-new question, but go ahead. It seems to me what the trustee is arguing, what you're arguing here, is removing the options from B-1. It seems to me that Congress, whoever proposed this language, but Congress ultimately adopting it, said one of the ways to proceed is to avoid what you're talking about and make all these claims payable as soon as possible. And the other option is not to do that. And what you're saying is if that's the option that's chosen, we must have the equivalent. You don't have to pay off your unsecured creditors as quickly as you could, but you've got to warehouse that money somewhere. And so there would be no reason, it seems to me, for the—I won't leave my subsectors out again— B-1A language, if that is the requirement. Any response to that? I mean, it seems to me if B-1A serves no purpose, if the money just has to be frozen somewhere, it might as well be given to the unsecured creditors. And so what's the purpose of B-1A? The purpose of B-1A? Well, it speaks to value. The language in it of itself speaks to value. And I think the majority of the decisions in bankruptcy— Why have that as an option, if that's what you're asking? Why have B-1A as an option if you're going to basically require the equivalent of B-1B every time? You either pay your creditors or you pay somebody else and let it sit there until you do pay your unsecured creditors. Well, it's there because the underlying policy, which was the heart of the BATSEPA reforms, is to have a debtor pay the maximum amount that he can afford. But we have to remember the fundamental rule of interpretation is to give effect to every provision and every word of the code. We can't view something in isolation. So adherence to 1325B-1A doesn't preclude review of all other applicable provisions, especially those requiring—that must be met for a confirmation, such as the preservation— So why would that option be there? How does that benefit anyone? It doesn't benefit the debtor at all, it seems to me. You're saying it might benefit some other aspects of the bankruptcy process. But if this is a confirmation, a Chapter 13 plan submitted by the debtor, where among the other decisions that have to be made is whether to present a plan that satisfies B-1A or B-1B, it seems to me the debtor is never benefited by using B-1A under your interpretation. The benefit lies with payment to creditors, and that is what the heart of BATSEPA reforms were, was to pay the maximum amount to creditors. So B-1A shouldn't exist. You ought to just require unsecured creditors be paid off immediately, as B-1B requires. I don't know why Congress would have given this option. It doesn't necessarily require them to pay them off immediately. It just requires them to pay the funds, as you read the statute, during the applicable commitment period. Well, what B-1, you can probably say it by heart, but what I'm saying is provide all of the debtor's projected disposable income to be received in the applicable commitment period will be applied to make all of that money, will be applied to make payments to the unsecured creditors. So you're paying it off as soon as you can, not immediately, but as soon as the debtor's disposable income, not disposable at that stage, but permits it to be paid off. Well, we'll have to see. I'm hearing you. I'm not sure I can quite accept what you're saying. Counsel, did you begin your argument talking about what the form of relief should be if we determine that this non-statutory condition was unauthorized? Yes. Is that where I heard you began? Yes. If this Court is of the opinion that the condition that was knowingly and voluntarily chosen by the debtor contravenes 1329, despite what the trustee's position is that it does not, that it isn't sufficient to just strike the condition and allow this case to proceed. Well, that's what happened in Martinez, isn't it? Excuse me? The non-statutory condition was struck, and then the plan was confirmed. Well, what's important about Martinez is that the underlying . . . So your answer is yes, that is what happened in Martinez. That is what happened. All right. But there is a reason why that case was never appealed either, because the underlying bankruptcy case had, in fact, been dismissed prior to the issuance of the opinion by the district court, and there being no stereotypes of value and being no case or controversy at that point in time, it was just not economically feasible for the trustee to appeal the decision. Let me ask, if I'm not interrupting Judge Graves, or even if I am, just a brief question. Was the case moot at that time when Judge Ezra ruled in Martinez? Are you saying there was nothing really before the . . . It is the position of the trustee that it is moot because the underlying . . . Was that presented to the judge? Did he have six months, and he worked on it or whatever, and nobody told him the case was moot? Or what was the back story on that? The debtor in Martinez did not advise the district court that its case had been mooted . . . Okay. . . . or had otherwise been dismissed. Hand off that. Thank you. So what do you want us . . . No question. What do you want us to do if we find that this non-statutory condition was . . . Well, considering that the condition was . . . the two conditions that were offered were offered so that the debtor could remain in bankruptcy and continue with the bankruptcy protections and receive the benefits of the automatic stay. The confirmation order should be affirmed. The alternative would be vacating the entire confirmation order because the conditions offered were offered as a means to kind of give effect to 1325A, particularly those provisions that were not being satisfied in this case. The debtor had a plan that he filed that had no limitation on the use of excess income. In fact, the plan that was . . . I'm listening very carefully . . . Okay. . . . for what we should do. So the confirmation order should be . . . Should be affirmed with the condition. But if this court . . . With the condition that we find was not authorized. If you find the condition is not authorized, then the confirmation order should be vacated because the debtor's plan as filed did not satisfy all of the requirements of 1325A. All right. You understand that was my question at the very beginning. If we find that the non-statutory condition was unauthorized . . . I just understand . . . All right. Do you understand my response? Maybe. Just to be clear, we're asking that the confirmation order be affirmed. The decision . . . I know. You want that condition approved. You want us to find that that condition was just fine. It's just fine. But if you find that it is not because the condition was placed only because 1325A was not satisfied . . . Well, but there's no finding of that. That's your argument. But you've just told us the district judge one way or the other didn't say. No express finding. No express finding, but the record is very clear about the admitted concerns about noncompliance of particular provisions, specifically 1325A1, which incorporates the trustee's role to preserve assets of the estates because that was one of the admitted concerns of the court was ensuring that the excess income would go to the unsecured creditors. And to answer your question, Judge Englehart, the unsecured creditors, per the debtor's plan, they would not receive distribution until month 53. That's when it would commence. But has anyone . . . My new question, based on what you just said, if we agree with the appellant in this case and we agree with you in terms of what should be done, in other words, that we vacate the confirmation of the plan, have there been any payments while this appeal is pending? Any payments under the plan to anyone? Can we unring that bell if we are so inclined, or is that money that's just . . . Well, those are funds that have been dispersed pursuant to the terms of the confirmed plan. Well, I understand. That's why I'm asking if we unconfirm the plan by vacating it, they get a credit, I guess. Is that . . . The bankruptcy court would just hold another confirmation hearing, and we would proceed accordingly in accordance with the code. Okay, but somebody . . . I don't know whether or not the plan then should be denied and the case dismissed, but the debtor will have received a benefit because those debts, particularly right now, all that's being paid . . . Are reduced. . . . are the secured obligations, and those debts are reduced. Okay, all right. And to just remind the court, what's being paid for right now are the mortgage arrearages . . . Right, secured, priority debts. . . . and the vehicle in which he uses. Right. And that just kind of reminds me to tell this court that it must not be forgotten that the debtor is and has been receiving benefits while in Chapter 13, retaining the non-exempt assets with uncontrolled and unreviewable use. Because, again, we have to remember that a debtor does not have the authority to transfer post-petition earnings, which he pretty much admitted that he would do, until such time after it was spent. Because he is of the opinion that the code specifically allows him to do that. But nowhere in the code does it state that he has authority to do that. In fact, the Bankruptcy Rule 6004, Rule 2002, and Section 363 of the code, prohibit transfer of property without notice to the court. And that was a big concern of the court, particularly when it had no notice of where this excess income was going, despite the fact that the debtor had pretty much admitted that he would expend them funds. Is there anything in the code that explicitly authorizes the addition of conditions under plans that are in compliance that satisfy 1325? I believe, Your Honor, that 105 allows it. Because the Bankruptcy Court is authorized under 105 to fashion orders as is necessary to further the substantive provisions of the code. And how do you respond to Judge Ezra's comment on it? Because I think he takes that up and says, well, but that's all well and good and very broad authority, but it doesn't allow the Bankruptcy Court to negate a specific statutory provision. Is that, if I'm characterizing his opinion correctly, how do you respond to that? Well, again, this is where the trustee and the Bankruptcy Court did not agree with the application of the condition against 1329 because the Bankruptcy Court did at least address and find that there is an issue regarding modifications of plan when excess income has been transferred or dissipated without notice. It's essentially as if the Bankruptcy Court made the finding that somewhere down the line, Debtor, if you choose to modify the plan, this is exactly how I'm going to rule as I have in the past. What's your reaction to the question? It displaces the condition up front, but it doesn't contradict. It basically adhered to his decision, prior decisions, in doing so. Yes, Your Honor. To your reaction to my question of how binding this is, the district judge is giving a heads-up on how he will rule if he's still the bankruptcy judge in charge of this, but can he approve the modification of a plan that doesn't have this? If modification comes forward, if he's used the Molina Clause in the initial confirmation order, does he have to follow it? Why would that be binding on the court? His own decision? His own earlier decision. Well, it's not necessarily binding, but it goes to the question of good faith at that point, because the debtor then would have acted in contravention of the provisions of the code. Yeah, but if on all the modification issues are brought before the court, the court says, well, I think that was an improperly limited limitation on modification. I'm not going to require that. Here's what I'm going to confirm. Would he have the authority to do that despite a Molina order in the initial confirmation? If the imposed condition, if he had already put in his order, I don't believe he would undo his own. Let's just take, well, you say you don't think he would. I'm asking would he have the authority to confirm a plan that is not consistent with the Molina order that he had in the confirmation three years earlier? When a modification comes back, is this binding on the bankruptcy court is all I'm asking. 1327C indicates that it is binding amongst all the parties. All right. You've used up your time. Judge Southwick, to answer your question directly, the modified confirmation order is binding, but if there are changes in circumstances, the court can modify the plan. Yeah, but I'm talking can he modify his order? Modify his order. So there would have to be some change in circumstances that would relate to it. It's the only time you get a modification. Sorry. And that's when you get a modification, when there's a change in circumstances. But I'm just wondering about whether you're doing anything other than informing debtors and creditors what the plan will, modification will look like if a modification is requested based on the current thinking of the bankruptcy judge, and it may not be his thinking when the modification comes back to him. Well, I don't think this is an essential issue in the case. Why don't you give us your rebuttal? Yes, Judge. I want you to assume we agree that the non-statutory, and I'm not predicting, I'm saying for purposes of this question, assume we agree with you that that was an unauthorized condition. What relief are you seeking? What do you want us to do? Judge Graves, I suggest that you do what the district court did in Martinez, and that is vacate that part of the confirmation order that imposes the Molina language, and allow the confirmation order to remain in effect. And is Martinez the strongest authority you have in support of that proposition? That's, yes, Judge. The strongest mean the only authority? The only. I apologize I didn't brief that issue extensively. Well, let me ask Abel Counsel on the other side. It's saying there were significant concerns, may have been the word expressed by the bankruptcy judge, about whether this plan actually complied and should be confirmed. It does seem to me under 1325, I wonder if it should have been confirmed, regardless of the Molina provision, if the judge didn't think it complied with 1325. But regardless, do you agree the district court, at least in the confirmation hearing or wherever it would have been expressed, did indicate a lack of conviction that all the Ts were crossed and the periods were there? And for that reason, we can't say with conviction that the bankruptcy court thought this plan was in compliance? If I understand your question correctly, Judge. I just want you to play off what you heard from the other side during her argument. Do you agree that there were some sort of concerns being expressed by the district judge and to some extent this extra provision in the confirmation order was supposed to take care of those concerns? I do agree that the bankruptcy judge had concerns, but those concerns are with the way the statute was written. It is not concerns about the debtor's willingness to perform. Meaning B1A and B1B, how that's written? Yes, the judge did not find that the debtor, there were no, the trustee did not argue that the debtor did not propose a plan in good faith or any, there's nothing wrong with the legal conditions of the plan. But the bankruptcy, and that's why they want to apply this Molina language in every case where the debtor has 100% play and they're only going to pay in, and this is being applied in every case regardless of the totality of the circumstances. Principal concern is the one being expressed here by the trustee's counsel, which is there's no requirement in the way it's interpreted that the unsecured be paid off as soon as they could be paid off? There is no requirement. I'm saying, but is that the concern? There is no statutory requirement. It is a valid concern, Judge, but that, again, that's a quarrel with Congress, the way Congress wrote the code. Congress drafted this provision 35 years ago with the enactment of the bankruptcy code. They've amended it, the bankruptcy code, several times. They amended it in 2005 to add the disposable income requirement and to extend the term of the plan from three years to five years, but they've never extended the option that the debtor has. In addition, the trustee argued that there was dissipation concerns that she had about the assets, but 1306 says the debtor shall remain in possession of property of the estate, and 1322 says that the debtor shall submit such portion of future earnings as are necessary for execution of the plan. Counsel, is it your position that without this condition, if a debtor, such as your client in this case, moves later on to 1329, a change of circumstances, at that time the bankruptcy judge can express concern and deny such a motion unless it accounts for 100 percent of payment to unsecured creditors? I believe so. Is that your reading of the law, that that's the proper device to accomplish what apparently is being sought here? No, the Molina language is not proper. What is proper is for the debtor to be allowed to submit a motion to modify like any other debtor. And the bankruptcy judge can say, I won't grant this motion unless unsecured creditors are accounted for 100 percent. He can if the Molina language is imposed. If there is no Molina language that is part of the confirmation order, and there should not be, if there's not, then the bankruptcy. I'm talking about a later filed motion. Let's say two and a half years from now the debtor comes to court under 1329 and says, look, that was then and this is now. Now I don't want to pay. I can't pay for whatever reason. I would like a modification. Can the bankruptcy judge then say, well, I'm going to deny your motion because of what has happened in the two and a half years that have now passed. I'm going to deny the motion unless you satisfy the unsecured creditors 100 percent. Is that a proper I realize this is hypothetical, but is that a proper application of the law without the Molina condition? No, it's not. It is not. The court should have the discretion at that time because 1329 gives the debtor the discretion. I see my time is up now. Yes, yes. 1329 gives all debtors the discretion to ask that the plan be modified. Ask. Ask. And the court can deny confirmation at that time based on the totality of circumstances. For example, if a plan is confirmed in two months with the Molina language and two months later the debtor can no longer work, becomes disabled, and needs to lower the plan to reduce the payment to unsecured, the court should have the authority and the fairness to say that that's allowed. It's not going to hurt any creditors. You're only two months into the plan. Or if the debtor gets to about 56 or 55 and has a devastating injury, can no longer work, no longer has income, the court can deny a modified plan at that point. That doesn't seem to be fair. But the court can also deny a modified plan on grounds that, well, you had the benefit, the debtor had the benefit of disposable income that was not used to pay unsecured creditors. In other words, the debtor had the benefit of a good deal at confirmation and now seeks to modify after having use of disposable income. That is a matter of law, Judge. I contend. I contend that the court should use its discretion at that time, and the judge is going to ask, well, what did you do with that excess disposable income? Well, what if the disposable income excess was only $100 a month and we're four months into the plan? So the court should be allowed to use its discretion and deny confirmation or granting. All right. Thank you. Thank you both for your presentations, and we'll take a brief recess. Thank you.